Below is an opinion of the court.

_____
THOMAS M. RENN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Cindy Lea McDaniel,<br><br>        Debtor. | Case No. 22-60627-tmr7 |
| Kelly Dennis,<br><br>        Plaintiff,<br><br>        v.<br><br>Cindy Lea McDaniel,<br><br>        Defendant. | Adv. Proc. No. 22-6024-tmr<br><br>MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1] |

Plaintiff Kelly Dennis filed this adversary proceeding against Defendant Cindy Lea McDaniel in her chapter 7 bankruptcy case. In his complaint, Dennis seeks a determination that the amount McDaniel owes to Dennis based on two state court judgments is not dischargeable

---

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

Page 1 of 15 – MEMORANDUM DECISION ON SUMMARY JUDGMENT

under 11 U.S.C. §§ 523(a)(2)(A), (4), and (6).[2] Dennis has filed a Motion for Summary Judgment along with supporting documents that include a declaration with attached exhibits. ECF No. 8. McDaniel opposes the motion and has filed a Response in Opposition. ECF No. 16. I have reviewed the pleadings and documents filed by the parties, heard oral argument on the motion, and conducted my own legal research. This matter is ready for ruling, and I grant the motion as described in this memorandum.

**Facts:**

In the Motion for Summary Judgment, Dennis recited his detailed version of the material facts and supported them with attached exhibits. ECF No. 8, pages 2-6. McDaniel does not specifically challenge this recitation of material facts, and she points to the same trial court findings and the testimony from the parties in the state court trial. ECF No. 16, pages 2-5. The parties do not dispute the following background facts. Dennis and McDaniel were in a relationship dating back to approximately 1990. In 2014, Dennis opened joint checking and savings accounts funded entirely from his paychecks. After their relationship ended in early 2020, Dennis claimed McDaniel used the funds from the joint accounts for unauthorized uses and later filed a lawsuit against McDaniel in Oregon Circuit Court for Linn County. In the lawsuit, Dennis asserted claims for financial elder abuse, conversion, unjust enrichment, and replevin. After a trial in January 2022, the state court made findings and entered a General Judgment and Money Award in favor of Dennis on March 17, 2022. ECF No. 8, Exh. A. On May 11, 2022, the state court entered a Supplemental Judgment for Attorney Fees, Costs and

---

[2] Unless otherwise indicated, all chapter and section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Disbursements. ECF No. 8, Exh. I. Both judgments included provisions for post-judgment interest at 9% per annum.

On May 16, 2022, McDaniel filed her voluntary chapter 7 bankruptcy petition, and she listed Dennis on her Schedule E/F as a nonpriority unsecured creditor with a judgment. Dennis filed Proof of Claim No. 2-1, attaching both the general judgment and the supplemental judgment, and asserting an unpaid total balance of $266,425.14 owed on those judgments as of the bankruptcy filing date.

Dennis timely filed a complaint commencing this adversary proceeding against McDaniel, and he seeks a determination that the balances owed under the two judgments are excepted from the discharge under §§ 523(a)(2)(A), (4), and (6), along with a further award of attorney's fees, costs, and disbursements incurred in prosecuting this adversary proceeding. ECF No. 1. After McDaniel answered (ECF No. 5), Dennis filed a motion for summary judgment asking the court for judgment on all claims. ECF No. 8. McDaniel filed a response in opposition to the motion. ECF No. 16.

**Jurisdiction:**

The bankruptcy court has jurisdiction to decide the claims at issue under 28 U.S.C. §§ 1334 and 157(a), and Oregon Local District Court Rule 2100-2. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The parties have consented, and I find that this court has constitutional authority to enter final orders and judgments in this proceeding.

**Summary Judgment:**

The parties do not disagree about the standards to apply in motions for summary judgment, and the briefs have cited the relevant rules and cases. Federal Rules of Bankruptcy Procedure (FRBP) 7056 incorporates Federal Rules of Civil Procedure (FRCP) 56(a) which

provides that summary judgment is appropriate if there is no genuine dispute over any material fact and the movant is entitled to judgment as a matter of law. Materiality is determined based on the substantive law related to the dispute, and material facts are such facts as may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts as to the existence of genuine disputes about material facts should be resolved against the moving party. All rational or reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party has established a basis for summary judgment, the burden shifts to the nonmoving party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986) (nonmoving party cannot rely on mere allegations or denials).

In this case, the parties reference the same documents, but the submissions make clear that the parties interpret the facts and the state court ruling differently. The differing interpretations would generally prevent entry of summary judgment, but we have the state court findings and money judgment which could make summary judgment appropriate based on the issue preclusive effect of the state court ruling.

**Issue Preclusion:**

Bankruptcy courts apply issue preclusion in § 523 nondischargeability actions. *See Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Bankruptcy courts must give "full faith and credit" to state court judgments. 28 U.S.C. § 1738. Oregon state law determines whether to give Oregon judgments preclusive effect in bankruptcy court. *See Peltier v. Van Loo Fiduciary Servs., LLC, (In re Peltier)*, 643 B.R. 349, 357 (9th Cir. BAP 2022). Issue preclusion under Oregon law requires five elements:

1. The issue in the two proceedings is identical.
2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding [and]
5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

*Peltier*, 643 B.R. at 358 (citing *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104 (1993) (internal citations omitted)). The prior state court ruling will have preclusive effect on all issues "that the court expressly decided **or** were necessary to the court's judgment." *Peltier*, 643 B.R. at 358 (citing *Chase v. Gordon, Aylworth & Tami, P.C.*, Case No. 3:18-cv-568-AC, 2019 WL 5085417, at *7 (D. Or. Oct. 10, 2019)) (emphasis included).

The parties here agree on the above-listed elements for issue preclusion under Oregon law, and they do not dispute that the final three elements are met. I agree with the parties and, therefore, find those three elements are established. The parties disagree over whether the issues in the two proceedings are identical and whether the state court findings are sufficient for Dennis to establish his § 523 bankruptcy claims in this adversary proceeding. More specifically, McDaniel asserts that the state court did not address or make findings on the issues of "intent" or "state of mind" sufficient to satisfy the bankruptcy requirements when entering its rulings. I address the disagreement in the context of each asserted bankruptcy claim below.

**State Court Findings:**

As described above, after trial the state court found that McDaniel had committed conversion and violated the financial elder abuse statutes. Based on those findings, the state court entered a General Judgment and Money Award in favor of Dennis in the amount of $223,821.38, which included $144,422.32 in damages of which $39,699.53 were subject to treble damages.

ECF No. 8, Exh. A, page 3. The court had previously rejected the claims for unjust enrichment and replevin. *See* ECF No. 8, Exh. D, pages 174 and 175. The state court specifically found conversion and that the money was "misappropriated" by McDaniel. ECF No. 8, Exh. D, pages 175-176; ECF No. 8, Exh. A, page 2. In the general judgment, the state court further found that the misappropriation constituted a "wrongful taking and appropriation" under the financial elder abuse statute and that it was done "through means of deceit and misrepresentation." ECF No. 8, Exh. A, page 2. Based on a request by Dennis for attorney's fees and costs under ORS 124.100(2)(c) and Oregon Rules of Civil Procedure 68B, the state court entered a Supplemental Judgment for Attorney Fees, Costs and Disbursements in the total amount of $38,595.26. ECF No. 8, Exh. I. Both judgments accrue simple interest at the rate of 9% per annum.

**Conversion:**

The state court found in its judgment that McDaniel's actions constituted conversion of the financial interests of Dennis. ECF No. 8, Exh. A, page 1. The state court further found that the "appropriation was accomplished through means of deceit and misrepresentation." ECF No. 8, Exh. A, page 2. Oregon law defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Becker v. Pacific Forest Indus., Inc.*, 229 Or. App. 112, 116 (2009). *See also Mustola v. Toddy*, 253 Or. 658, 663-64 (1969) (adopting Restatement (Second) of Torts definition). Thus, to have entered its judgment on the conversion claims, the state court must have determined that McDaniel acted intentionally and that the intentional act necessarily injured Dennis and his property interests sufficiently to establish the award of damages.

Page 6 of 15 – MEMORANDUM DECISION ON SUMMARY JUDGMENT

Case 22-06024-tmr    Doc 21    Filed 09/29/23

**Financial Elder Abuse:**

The state court also held that Dennis established claims of financial elder abuse related to actions by McDaniel against Dennis after he turned age 65 and thus became "elderly" as defined under ORS 124.100. ECF No. 8, Exh. A, page 2. Although the conversion damages covered all the misappropriated funds, the financial elder abuse claims were limited to those after Dennis turned 65. ORS 124.100(2) provides for recovery as follows: "A vulnerable person who suffers injury, damage or death by reason of . . . financial abuse may bring an action against any person who has caused the . . . financial abuse or who has permitted another person to engage in . . . financial abuse." An action under ORS 124.100 may be brought "when a person wrongfully takes or appropriates money of a vulnerable person." ORS 124.110(1)(a). Such a claim for financial elder abuse has four elements: "there must be (1) a taking or appropriation (2) of money or property (3) that belongs to an elderly or incapacitated person, and (4) the taking must be wrongful." *Church v. Woods*, 190 Or. App. 112, 117 (2003). To be wrongful under the statute, the taking or appropriation must be done with an improper motive or by improper means. *Church*, 190 Or. App. at 118. In our case, the state court determined that McDaniel "misappropriated" funds from the joint accounts and that the misappropriation "constitutes a wrongful taking and appropriation" which "was accomplished through means of deceit and misrepresentation." ECF No. 8, Exh. A, page 2. Both deceit and misrepresentation are examples of types of improper means courts use to support findings of wrongful takings under the financial elder abuse statute. *See Church*, 190 Or. App. at 118.

**Section 523(a)(2)(A):**

Section 523(a)(2)(A) excepts from a debtor's discharge all debts for money obtained by "false pretenses, a false representation or actual fraud." Section 523(a)(2)(A). Dennis alleged in

Case 22-06024-tmr    Doc 21    Filed 09/29/23

his adversary proceeding complaint that McDaniel "knowingly made false representations and material omissions" resulting in the losses identified by the two judgments. ECF No. 1, par. 14. To prevail on a false representation claim under § 523(a)(2)(A), a creditor must prove that: "(1) the debtor made a representation, or omitted to state a material fact(s) to the creditor; (2) at the time that the subject representation or omission was made, the debtor knew that the representation was false, or knew that the omission created a false statement, and the debtor was under a duty to disclose the omitted information; (3) the debtor made the subject representation or omission with the intention of deceiving the creditor; (4) the creditor justifiably relied; and (5) the creditor sustained damages as the proximate result of the representation or omission having been made." *Daniels v. Holman (In re Holman)*, 536 B.R. 458, 464 (Bankr. D. Or. 2015) (citing *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1246 n.4 (9th Cir. 2001)). *See also Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000) (included "deceptive conduct" as part of the first element).

The Supreme Court has focused on the actual fraud component of the statute and held that a debt can be nondischargeable under § 523(a)(2)(A) without a false representation if other forms of fraud are proven. *Husky Int'l Elec., Inc. v. Ritz*, 578 U.S. 355, 366 (2016) (fraudulent conveyance). In *Husky Int'l*, the Supreme Court stated that "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Husky Int'l*, 578 U.S. at 360. Further, the actual fraud does not require fraud at the inception or any reliance requirement as with false representation claims. *Husky Int'l*, 578 U.S. at 366. Finally, "any debts traceable to" the fraud will be excepted from the discharge, including treble damages and attorney's fees and costs arising from the fraud. *See Cohen v. de la Cruz*, 523 U.S. 213, 218-19 (1998). In discussing the exception, the Supreme Court has stated that it is "unlikely that Congress…would have favored

the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." *Cohen*, 523 U.S. at 223 (citing *Grogan v. Garner*, 498 U.S. at 287).

In his motion, Dennis asserts that the five elements for false representation cited above have been met, but I was unable to locate state court findings that directly address elements 2 and 3 listed above. The state court did find misrepresentation by McDaniel, but it did not address the timing issues of whether she knew any representation was false at the time made or whether she made the representation with the intent to deceive Dennis. After *Husky Int'l*, however, the analysis does not end there, because fraud at the inception and reliance are not required with actual fraud. *Husky Int'l*, 578 U.S. at 366. The state court found that McDaniel committed conversion and that the conversion constituted "a wrongful taking and appropriation" which "was accomplished through means of deceit and misrepresentation." ECF No. 8, Exh. A, page 2. As discussed above, conversion under Oregon law requires an intentional taking of control over the property. Combining the state court's findings of conversion, wrongful taking and appropriation, and deceit and misrepresentation, I find that the state court made sufficient findings to meet the requirements of actual fraud under § 523(a)(2)(A). Therefore, the balance due to Dennis from McDaniel represented by the state court judgments is nondischargeable under § 523(a)(2)(A) without further evidence of intent beyond the intent inherent in those findings.

**Section 523(a)(4):**

Section 523(a)(4) excepts from the discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(4). Dennis has not asserted that McDaniel acted in a fiduciary capacity. The remaining two grounds of embezzlement and larceny stand independent of the fiduciary capacity requirement. *See Bullock*

*v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013). Dennis asserts that the debt is excepted from the discharge as embezzlement. The Supreme Court has stated that "[e]mbezzlement is the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." *Moore v. U.S.*, 160 U.S. 268, 269-70 (1895) (criminal case). An embezzlement claim under bankruptcy law has three elements: (1) property rightfully in the possession of a nonowner, (2) the nonowner's appropriation of the property to another use; and (3) circumstances indicating fraud. *See First Del. Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th Cir. BAP 1997) (citing *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991)).

In our case, the first element of embezzlement is established by the creation of the joint bank accounts as described in the facts identified by both parties and the state court rulings. The state court found that the money in the joint accounts belonged to Dennis who gave McDaniel access to the funds, so they were rightfully in her possession. ECF No. 8, Exh. A, page 2. For the second element, in multiple places the state court found conversion through McDaniel's "appropriation" of the funds and specifically found that McDaniel "misappropriated" the money. ECF No. 8, Exh. A, page 2. With respect to the final element of circumstances indicating fraud, the state court found that the taking of the funds "was accomplished through means of deceit and misrepresentation." ECF No. 8, Exh. A, page 2. That is enough to indicate fraud.

McDaniel argues that the state court judgment does not meet the requirements of § 523(a)(4), because the state court did not make any findings related to her state of mind or intent. ECF No. 16, page 12. The state court, however, made specific findings of deceit and misrepresentation, which as previously discussed certainly encompass actions amounting to fraud. Even in the light most favorable to McDaniel, a bankruptcy court may infer intent from

the totality of circumstances described in the state court's findings. *See Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (comparing federal larceny definition to Nevada state law conversion finding). The state court findings of conversion and deceit and misrepresentation meet all the elements of § 523(a)(4), and, to the extent needed, I infer from the totality of the circumstances that the state court findings support each of the elements of § 523(a)(4) and require that the debt owed to Dennis be excepted from the discharge. *See Ormsby*, 591 F.3d at 1205 n.5 (state court finding of conversion "alone sufficient").

**Section 523(a)(6):**

Section 523(a)(6) excepts from the discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Section 523(a)(6). "A determination whether a particular debt is for 'willful and malicious injury by the debtor to another' under section 523(a)(6) requires application of a two-pronged test to apply to the conduct giving rise to the injury. The creditor must prove that the debtor's conduct in causing the injuries was both willful and malicious." *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732, 736 (9th Cir. BAP 2009), *aff'd*, 529 F. Appx. 832 (9th Cir. 2013) (unpublished). *See also Ormsby*, 591 F.3d at 1206.

"Willfulness requires proof that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself." *Suarez*, 400 B.R. at 736-37 (citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1143 (9th Cir. 2002)) (in turn citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)). The Supreme Court in *Geiger* noted that in the construction of § 523(a)(6), "the word 'willful' … modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61 (emphasis in original).

The Ninth Circuit has interpreted *Geiger* to hold that "the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that the injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).

McDaniel intentionally spent the money in the joint accounts for items that the state court found were not authorized. She knew that Dennis would be injured financially because of the spending. "The Debtor is charged with the knowledge of the natural consequences of his actions." *Ormsby*, 591 F.3d at 1206. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Carrillo*, 290 F.3d at 1146 n.6. Although McDaniel claimed she was just spending the money that Dennis authorized, her actions in spending money to which she was not entitled made clear that she intended to take from, and thereby injure, Dennis. Such actions are willful.

In her defense, McDaniel argues that the state court made no findings of a "felonious" or "malicious" intent to harm Dennis. ECF No. 16, page 12. In *Jercich*, the debtor made similar arguments in claiming that he did not have a "specific intent" to harm the creditor. *See Jercich*, 238 F.3d at 1207 (debtor withheld payment of wages and knew that injury was substantially certain to occur). The *Jercich* court cited conversion cases for the proposition that a wrongful act like conversion, done intentionally, met the requirements for a willful and malicious injury. *Jercich*, 238 F.3d at 1208 (citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 142 (1916); *Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999); and *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 604 (5th Cir. 1998)). In our case, the state court found conversion, misappropriation, and wrongful taking. ECH No. 8, Exh. A, page 2. McDaniel knew that

Page 12 of 15 – MEMORANDUM DECISION ON SUMMARY JUDGMENT

Case 22-06024-tmr    Doc 21    Filed 09/29/23

spending the money would result in reduced funds for Dennis in the joint accounts and that injury to Dennis was substantially certain to occur. Yet, she intentionally took those actions to benefit herself personally and injure Dennis. These actions demonstrate that she inflicted willful injury on Dennis.

Next, to find McDaniel's conduct to be malicious, Dennis must show state court findings that McDaniel: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily caused injury; and (4) was done without just cause or excuse. *See Carrillo*, 290 F.3d at 1146-47 (citing *Jercich*, 238 F.3d at 1209). *See also Ormsby*, 591 F.3d at 1207. After establishing that the conduct was willful, the creditor can show malice "based on the nature of the wrongful act." *Ormsby*, 591 F.3d at 1207. As described above, the state court found that McDaniel committed wrongful acts of conversion, misappropriation, and wrongful taking which were accomplished through misrepresentation and deceit. ECF No. 8, Exh. A, page 2. She did those acts intentionally, for the purpose of generating a benefit for herself. The increased benefit came at a cost to Dennis and necessarily caused him injury.

McDaniel argues that the state court findings were not sufficient, but she does not point to any just cause or excuse to negate malicious intent. She made her assertions and arguments to the state court, who did not believe her assertions in that regard. Based on that conclusion and the other findings, I find her actions were done without just cause or excuse. McDaniel's conduct thus was malicious. McDaniel further argues that nothing in the state court findings suggest a "felonious" or "malicious" intent, but she argues for the application of a heightened standard of malice that is not applicable in the dischargeability context. *See McIntyre*, 242 U.S. at 142 (not necessary to prove special malice toward individual); *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc) ("malicious" does not require personal hatred, spite, or

ill-will). Therefore, the debt from the judgments reflects damages incurred by willful and malicious injury to Dennis and is excepted from the discharge under § 523(a)(6).

**Attorney's Fees and Costs:**

Dennis seeks summary judgment on his request for a judgment declaring nondischargeable the debts represented by both the General Judgment and Money Award entered March 17, 2022, and the Supplemental Judgment for Attorney Fees, Costs and Disbursements entered May 11, 2022. As I discussed earlier, "any debts traceable to" fraud will be excepted from the discharge, including treble damages and attorney's fees and costs arising from the fraud. *See Cohen*, 523 U.S. at 218-19 ("full liability" falls within exception). Under that analysis, both judgments are covered and will be excepted from the discharge.

Dennis also requests on summary judgment an award of "his reasonable attorney's fees, costs, and disbursements" incurred during this proceeding. Costs, including attorney's fees, are awarded pursuant to FRCP 54(d), made applicable under FRBP 7054. It is premature to address fees and costs until judgment is entered. At that time, Dennis should file an appropriate motion with an itemization of the requested amounts.

**Conclusion:**

Based on the state court findings and judgments, and under the law as described in this memorandum, I find the amount due to Dennis from McDaniel in the General Judgment and Money Award entered March 17, 2022, and the Supplemental Judgment for Attorney Fees, Costs and Disbursements entered May 11, 2022, to be nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6), and I grant summary judgment in favor of Dennis on his First, Second, and Third Claims for Relief. I deny, without prejudice, as premature his further request for summary judgment awarding his attorney's fees, costs, and disbursements. This memorandum sets forth

my findings of fact and conclusions of law as required by FRCP 52(a), made applicable under FRBP 7052. They will not be separately stated. The court will enter a separate order granting the motion as described in this decision. Counsel for Dennis should lodge an appropriate form of judgment after the court enters the summary judgment order.

###